## UNITED STATES et al. v. ROYAL INDEMNITY CO.

District Court, W. D. Kentucky, at Louisville.
May 25, 1927.

**1. Internal revenue ⚖➡7(19)—Corporation held not entitled to deduct notes receivable from income as loss sustained during year 1920 (Revenue Act 1918, § 234a [4], being Comp. St. § 6336⅛pp).**

Plaintiff coal company, under the terms of a lease made in 1917, in the next two years paid lessors $20,000 advance royalties, for which lessors gave it notes, under agreement that they were payable only out of royalties earned. The lease was abandoned prior to 1920, though not canceled. No royalties were ever earned. *Held,* that the fact that, as the result of a suit brought by lessors in 1920, the notes were then indorsed as nonnegotiable, did not make them a loss sustained during the taxable year 1920, deductible from income of that year, under Revenue Act 1918, § 234a (4), being Comp. St. § 6336⅛pp.

**2. Internal revenue ⚖➡7(19)—Corporation could not deduct notes given for lease royalties as worthless debt, where it was required to pay royalty, whether it operated lease or not (Revenue Act 1918, § 234a [5], being Comp. St. § 6336⅛pp).**

Plaintiff coal company, under the terms of lease made in 1917, in the next two years paid lessors $20,000 advance royalties, for which lessors gave it notes under agreement that they were payable only out of royalties earned. The lease was abandoned prior to 1920, though not canceled, and no royalties were ever earned. *Held,* that the fact that, as a result of a suit brought by lessors in 1920, the notes were then indorsed as nonnegotiable did not make them

21 F.(2d)—5

deductible under Revenue Act 1918, § 234a (5), being Comp. St. § 6336⅛pp, as a debt ascertained to be worthless and charged off within the taxable year of 1920, where it was not charged off and could not be, since the lease remained in force and bound the company to pay a minimum royalty each year, whether it operated or not, against which the notes were a credit.

At Law. Action by the United States and Robert H. Lucas, Collector of Internal Revenue for the District of Kentucky, against the Royal Indemnity Company. Judgment for plaintiffs.

Thos. J. Sparks, U. S. Atty., of Greenville, Ky., A. W. Gregg, Gen. Counsel, Bureau of Internal Revenue, and C. C. McCormick, Atty. Bureau of Internal Revenue, both of Washington, D. C., for plaintiffs.

Beckham, Hamilton & Beckham and Woodward, Warfield & Hobson, all of Louisville, Ky., for defendant.

DAWSON, District Judge. [1] The plaintiffs vigorously press their contention that their motion to strike from the defendant's answer paragraphs 5, 6, 7, 8, 9, and 10, and their demurrer to defendant's answer, should have been sustained; but after further consideration I am content to let the order, overruling the motion to strike and the demurrer, heretofore made, stand. Therefore the sole question to be determined in this case is whether the taxpayer, Long Branch Coal Company, was entitled to deduct from its income for the year 1920 the $20,000 which it paid in 1918 and 1919 to Henry and Myrtle Porter, lessors, as advance royalties on a coal lease executed on December 17, 1917, by the Porters to Miller and Arrowood, and by them transferred to the taxpayer, Long Branch Coal Company.

Simultaneously with the execution of the lease an agreement was executed between the parties to the lease, by the terms of which the lessees were to pay to the lessors $20,000, as advance royalties for the property covered by the lease, it being provided: "That said $20,000 shall be repaid to second parties by the first parties out of the royalties of the parties of the first part as the same shall accrue and mature from time to time. The parties of the first part agree to transfer and assign said royalties up to $20,000 to the parties of the second part as soon as the said $20,000 is advanced and pro rata, if any part thereof shall be advanced."

The lease provided that the lessees should have a period of two years and six months

next ensuing after the date of the lease with- in which to begin operations on the leased property, and further provided for the payment of a royalty of 9 cents per ton upon 25,000 tons of coal for the first year following the 2½-year preparation period, a royalty of 9 cents per ton on a minimum of 60,000 tons of coal for the second year, and on a minimum of 100,000 tons for each subsequent year. Thus, under this lease there was a minimum royalty due for the year ending June 19, 1921, of $2,250, of $5,400 for the year ending June 19, 1922, and $9,000 for each subsequent year. The $20,000, agreed to be paid as advance royalties, were paid to the lessors during the years 1918 and 1919.

In February, 1919, to meet some objection of the Blue Sky Department of the state of Minnesota, under the laws of which state the Long Branch Coal Company was organized, it was arranged for the Porters to evidence the advance royalty transaction by four noninterest-bearing promissory notes, the first for $2,250, due June 19, 1921; the second for $5,400, due June 19, 1922; the third for $9,000, due June 19, 1923; and the fourth for $3,350, due June 19, 1924—these notes being secured by a mortgage of even date on the leased premises. It will be observed that these notes fell due on the identical dates upon which the minimum royalties fixed under the lease accrued, and, with the exception of the last note, were for the identical amounts of the minimum royalties for the corresponding years. The mortgage specifically refers to the fact that the lease secures to the Porters an amount in royalties sufficient to pay and discharge each of the notes as they shall become due and payable, and then provides: "* * * And the payment of said notes as they shall become due as herein provided by the second party (Long Branch Coal Company), its successors and assigns, shall be a payment of the royalty provided for in said lease, except as to the last note, and its payment shall be a credit on the royalties due and payable for that year."

In November, 1920, the Porters brought a suit in equity in the circuit court of Floyd county, Ky., for the purpose of enjoining the negotiation of these notes, and after a temporary injunction had been granted, and in the same calendar year, the litigation was settled by the Long Branch Coal Company making the notes nonnegotiable, by an indorsement thereon to that effect. The defendant claims that as a result of this suit,

and the settlement thereof in 1920, coupled with the alleged fact that in that year it was certainly ascertained that the lease could never be operated by the Long Branch Coal Company, so that it might recover, through royalties earned, the $20,000, the loss of that amount was sustained in 1920, and should have been deducted from its income in that year for taxation purposes.

Authority for the deduction claimed by the defendant must be found in section 234 of the Revenue Act of 1918. The applicable parts of that section read as follows:

"Sec. 234 (a). That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, and including rentals or other payments required to be made as a condition to the continued use or possession of property to which the corporation has not taken or is not taking title, or in which it has no equity. * * *

"(4) Losses sustained during the taxable year and not compensated for by insurance or otherwise. * * *

"(5) Debts ascertained to be worthless and charged off within the taxable year."

Comp. St. § 6336⅛pp.

It is apparent from the record that the deduction cannot be claimed under subdivision (1), as the record conclusively shows that this $20,000 was not an expense paid or incurred in the taxable year 1920. It was incurred as the result of the contract made in December, 1917, and according to the proof was actually paid out in the years 1918 and 1919.

I do not think the deduction can be claimed under subdivision (4), as a loss sustained during the taxable year. As I view the case, the notes and mortgage, the litigation in the Floyd circuit court, and the settlement thereof by destroying the negotiability of the notes, must all be disregarded in determining if the loss of this $20,000 was sustained in the taxable year 1920. It is apparent from the record that there was no intention upon the part of the parties, by the execution of the notes and the mortgage, in reality to change the method of repayment to the lessees of the $20,000 advance royalties. It is clear that it was thoroughly understood that the Porters were

not to be called upon to pay the notes in any other way than by applying them as a credit on the dead royalties the lessees were under obligation to pay.

As between the parties, the status of this $20,000 advance was exactly the same after the execution of the notes and the mortgage as before. The Long Branch Coal Company had neither the legal nor the moral right to negotiate the notes, and thereby create in the hands of an innocent third party, for value, an absolute and unconditional liability against the Porters for the amount of the notes. Before the notes were executed, the Long Branch Coal Company could recover the $20,000 only by taking credit by that amount of royalty as same accrued. The notes could be collected by it only in the same way. Therefore the notes added nothing of value to their claim; nor did the state court proceeding, and the indorsement of nonnegotiability on the notes in the settlement of that proceeding, destroy the value to the Long Branch Coal Company of the notes or of the claim for which they were given.

By the settlement the Long Branch Coal Company simply agreed not to do that which it never had the legal right to do anyway, and made that agreement secure by indorsement on the notes. The company lost nothing by that settlement. It was left exactly in the same legal position it had been in from the beginning. With this settlement eliminated, it seems clear to the court that there is no basis for the claim that this $20,000 was a loss sustained in the taxable year 1920, within the meaning of subdivision (4).

[2] It only remains to determine if the deduction can be claimed under subdivision (5). Two things are necessary to get the benefit of this subdivision: First, the debt must be ascertained to be worthless; and, second, it must be charged off *within the taxable year*. In view of the fact that this claim was carried on the books of the company as an asset up to the latter part of 1921, the presumption is that the company had not, in the taxable year 1920, given up hope of realizing on it, and Saunders' testimony, in so far as it is competent for any purpose, does not satisfactorily rebut this presumption. Moreover, if the statute is to be given its plain meaning, a complete answer to any claim for a deduction under subdivision (5) is the fact that the claim was not charged off in 1920. Indeed, in 1920 the Coal Company was in no position to

charge this debt off as a worthless one. It was bound under its lease contract, after the expiration of 2½ years from its date, to pay a stipulated minimum royalty, so long as the lease continued in effect, whether it mined coal or not. The first minimum royalty payment was not due during the taxable year 1920. No ground for forfeiting the lease then existed. The Coal Company had not undertaken to surrender its lease. Indeed, under its terms it had no right so to do. The option of forfeiting the lease for nonpayment of the minimum royalty, or for the nonperformance of its other conditions, did not rest with the lessee, but with the lessor, and, so long as the lessor continued to treat it as in force, the lessee was bound thereby, and, as the minimum royalties became due, if solvent, could have been required to pay the amounts thereof.

So, as the matter stood in 1920, the Long Branch Coal Company was under obligation, after the expiration of the two-year preparation period, to pay the minimum royalties fixed in the lease contract, so long as the lessors did not elect to forfeit the lease. Against this obligation it held a claim of $20,000 with which to liquidate the royalties as they matured. Therefore in 1920 this claim did have value, because it was a valid credit on a valid obligation owing by the Long Branch Coal Company and soon to mature. The fact that the Long Branch Coal Company went into bankruptcy in 1923 does not change the situation in 1920. In 1920 it had the lease as an asset. It is not satisfactorily shown that it had no value. The landlord had no right to forfeit the lease in 1920, and it is shown by Caldwell's letter that, even on June 19, 1921, the landlord was willing to continue the lease in force and to allow the minimum royalties accruing on that date to be applied in satisfaction of the first note. Nothing in the lease nor in the law of Kentucky prevented a sale of the lease, if a purchaser could be found, and using the proceeds thereof to reimburse the Long Branch Coal Company for the royalties advanced. For these reasons I am of the opinion that the taxpayer was not entitled to the deduction under subdivision (5).

It seems to me that, if the Long Branch Coal Company desired to get the benefit of this advance payment of $20,000 on its income tax reports, it should have claimed it under subdivision (1) of section 234 on its income tax reports for 1918 and 1919, when the money was actually paid, or it could probably have treated it as an expense

incurred, or a loss, for the consequent years beginning with 1921, when the minimum royalty on this lease commenced to run. For the reasons stated, I am of the opinion that the commissioner was correct in disallowing this deduction for the taxable year 1920.

Counsel will therefore prepare a judgment in accordance with the prayer of the petition, and present same for entry.